# United States District Court

## of the
## Southern District of Florida



Herman L. Crawford

   v.

Miami-Dade Dept. of Transportation and Public Works,

Miami Beach Police Dept., Harding Village Apartments,

Carrfour Supportive Housing, Miami-Dade Internal Services Dept.

**Case:** 1:24-cv-24291-JB

## 4th Amended Statement of Claim

Comes now, the Plaintiff, Herman L. Crawford, filing in Pro Se, hereby files this complaint for Gross Negligence, Conspiracy to violate Civil Rights, Failure to train City Workers, Discrimination, Retaliation, Spoliation, Harassment, Extortion, and Fraud against the Miami Beach Police Department, Miami-Dade County Internal Services department, Miami-Dade Department of Transportation and Public Works; Carrfour Supportive Housing; and Harding Village Apartments alleges as follows:

## I. Parties

1. Plaintiff, Herman L. Crawford, is an African American United States Veteran who resides at Harding Village Apartments 8520 Harding Ave. Miami Beach, Fl. 33141, and a client of Carrfour Supportive Housing, a veteran homeless recovery organization, as a recipient of a Miami Beach Section 8 housing voucher program.

2. Defendant, Ronnie Glenn Jones, resides at 6480 NW 6th Ave, Apt 10 Miami, FL. 33139 and is employed as a Transit Bus Operator for the Miami-Dade Department of Transportation and Public Works in the city of Miami. 701 NW 1st Court Suite 1700. Miami, FL 331361

3. Defendants Paul Flores, Rosa levy and Emilio Espina are Case Specialists for Veterans employed at Carrfour Supportive Housing, 8500 Harding Ave. Miami Beach, FL. 33141.

4. Defendant Octavia Peirson, is ex Manager and Terrance Leftridge Area Manager of Harding Village Apartments 8500 Harding Ave. Miami Beach, Fl. 33141.

5. Officer Suarez and Officer Mercier are Miami Beach Police Officers employed at 1100 Washington Ave. Miami Beach, Fl. 33139.

6. Maria Smith and Francianne Dorvilus, are employees of the Risk Management Division ISD are subject to the laws prohibiting discrimination, and harassment under Title VI of the Civil Rights Act of 1964, as amended (42 USC § 2000d), which prohibits discrimination on the basis of race, color, or national origin 45 CFR 80 and 42 U.S.C. 1983.

## II. Jurisdiction and Venue

7. This court has jurisdiction over the subject matter pursuant to Eighth and fourteenth amendment rights violations; 42 U.S.C. § 3617; 28 U.S.C. § 1331 and 1343. Title 18 U.S. Code sec. 371: "Conspiracy…to defraud…"; Title 42 U.S.C. sec. 241 "Conspiracy against rights…"; Title 42 U.S.C. sec. 242, Deprivation of rights under color of law; Title 42 U.S. Code sec 1983 (b) Gross Negligence; Title 42 U.S.C. sec. 12203 Retaliation; Title 42 U.S.C. sec. 3631 Criminal interference with rights to fair housing; Title 42 U.S.C. sec. 14141 Pattern and Practice; Federal Rules of Civil Procedure (FRCP) Rule 37(e) governs spoliation of evidence; Title 18 of the United States Code, Section 873 Extortion; Failure to train City Workers, Florida Stat. section 768.28 Negligent or wrongful action (or inaction) of any government employee (acting "within the scope of their office or employment") causes: injury; Florida Statute 784.03 covers battery and felony battery & 42 U.S.C. 1983 "…Wrongful arrest…".

8. Venue is proper in that the subject matter lies in the Southern District of Florida.

2

## III. Factual Background

9. Plaintiff attempted to report violations on Februrary10, 2021 to a Miami Beach off duty Officer. Before the Plaintiff had a chance to approach the Officer the Transit Operator illegally stopped traffic, exited the bus and rushed to the officer and gave him a false narrative of the events. The officer went for his service weapon when approached by the Plaintiff based on the information provided by the Operator. The incident was caught on video by a passenger and went viral on social media. Plaintiff filed a formal **discrimination complaint** against a Metro Transit bus operator with the Office of the Inspector General (OIG) for the discrepancies of **Covid Mask Rule violations** that were only enforced to inconvenience black passengers by Metro Transit Bus operators.

10. Plaintiff continued throughout several months to filed complaints with the Department of Transportation that resulted in no action eventually leading to Plaintiffs injuries validating his Gross Negligence claim.

### *Failure to train City Workers, Battery, Wrongful Arrest, Gross Negligence, Harassment, Spoliation, Discrimination and Retaliation*
Miami Beach Police Department (MBPD)
Miami-Dade Department of Transportation and Public Works (DTPW)

11. On December 9th 2021 Plaintiff was refused bus service by Ronnie Glenn Jones (RGJ), Metro Transit bus driver, due to his wrongful assessment of Covid Mask Rules. At 1:50 am the Plaintiff entered Bus S North heading to his residence the RGJ attempted to deny plaintiff service specifically due to a "no mask" rule, however, plaintiff in fact was **wearing an approved "face-covering"** which did give him the right to service as it was up to the operator's discretion. The Plaintiff refused RGJ orders to exit the bus and tried several times to explain to the driver that he was wearing an approved **"face-covering".** Plaintiff requested that RGJ call the police to

3

**deescalate** the situation. RGJ was heard by the plaintiff giving dispatch erroneous information about the situation. As the Plaintiff approached the driver an argument ensued which resulted in a physical altercation where the Plaintiff was **pushed, struck 13 times in the head, and grabbed by the Defendant with such force as to rip off his T-shirt and fracture the Plaintiffs left foot.**

12. Eventually the Miami Beach police were called and the Plaintiff was wrongfully arrested and jailed for the altercation for the charge of **"Battery"** by Miami Beach Police Officer Suarez, although it was RGJs sworn statement that the Plaintiff did not physically touch him, a pertinent element of the charge of **"Battery"**. For a defendant to be convicted *of misdemeanor battery under Florida Statute 784.03, the prosecutor must show: The defendant intentionally touched or hit another person against the other person's will; or. The defendant intentionally caused physical injury to another person.*

13. Charges were later **dismissed, Nolle Prosse** by the States Attorney's Office, and Plaintiff sought to file charges against RGJ for felony Battery and the **wrongful arrest** made by Miami Beach Police Officer Suarez **for intentionally neglecting to provide probable-cause at the scene of arrest.**

14. Plaintiff sought assistance with obtaining the surveillance footage of the incident with the assistant of Carrfour Supportive housing (CSH) specialists where he resides. Rosa levy, a Carrfour case Specialist presented issues with her involvement of the Plaintiffs agenda. When **asked for assistance in his discrimination claim against the Miami Beach police Department she stated she would not assist the plaintiff in any way. Plaintiff made requests to Assistant Director, Paul Flores, of Carrfour Supportive Housing (CSH) that Rosa Levy must cease and desist from any further involvement with the Plaintiffs case work, in that she became a conflict of interest.**

15. Plaintiff then **attained an attorney on August 22, 2022** with Barry Mittleberg Law and Pendas Law on **August 24, 2023**.

16. The Plaintiffs attorneys requested full Discovery from the Miami Dade Public Defender's office, specifically the surveillance footage from the incident on December 9, 2021 from the DTPW. The Miami-Dade Public Defender's Office sent the attorneys the discovery **excluding**

the surveillance footage specifically requested. After several months both attorneys eventually recused themselves from the case based on lack of reasources.

17. **Plaintiff in his pursuits to attain video from the Miami Dade Public Defenders Office made several requests with the assistance of Paul Flores to attain the discovery that contained video evidence which were rejected by the Public Defender's Office staff on several occasions.**

18. Plaintiff continued to seek assistant from **City Hall Commissioner Karen Gonzalez's Office** who referred him to the **Office of the Inspector General (OIG)** for further assistance. After a few days the video footage was provided the following day of its investigation.

19. Plaintiff with video evidence, proceeded to attempt to file for wrongful arrest and felony battery by (RGJ) through Miami Beach Police Department. **Miami Beach Police Department refused to investigate the wrongful arrest, as well as, Internal Affairs.**

20. After several attempts to file complaints through Miami Beach Internal Affairs and the (OIG), Plaintiff returned to City Hall for further assistance. While awaiting assistance in the lobby of Miami Beach City Hall unknown entities **filed a trespass complaint against the plaintiff, an attempt to thwart, dissuade and discourage him from moving forward with his complaint** against Miami Beach Police Department. As the officers were contemplating as to why they were called to the lobby for the trespass **Detective Castillo** of Miami Beach Police Department interceded and assisted the plaintiff with filing his complaint.

21. Plaintiff continued to file discrimination and harassment complaints against (CSH) concerning his treatment by (DTPW) and (MBPD) with the assistance of Paul Flores.

22. On May 7, 2023 on a separate incident Plaintiff reported harassment by a Transit Bus Operator. A few days later two uniformed Miami Beach Police Officers in escort by Octavia Peirson, Manager of (HVA) came to the Plaintiffs residents to investigate an **alleged "Bomb threat" against the Department of Transportation and Public Works (Police Report 2023-40256).** Officer Cabrera, conducting investigation shared that the report was initiated from Tallahassee resulting from the reported event.

23. After Detective Castillo's review of the surveillance footage on **6/14/2023 an OFFENSE**

5

**REPORT was created (Police Report 2021-110792)**, Plaintiff was then directed to Miami Dade States Attorney's office for further investigation. The Miami Dade State's Attorney's office refused to investigate the complaint on several occasions and **in a second attempt to dissuade and discourage the plaintiff from further pursuit initiated a trespass complaint.**

24. Plaintiff eventually filed his injury claim with the Miami-Dade County Internal Services Department Risk Management Division, 111 N.W. 1ST Street, Suite 2340, Miami, Florida 33128 (ISD). **During the ISD investigation Plaintiff reported that pertinent documentation that was requested for investigation were intercepted by Rosa Levy of (CSH), violating the Plaintiffs confidentiality rights to fair investigation.** Plaintiff then filed another formal complaint against Rosa Levy for **discrimination, harassment and violation of Plaintiffs right to a fair investigation** and confidentiality with the Carrfour Housing Complaint system as **he witnessed her enter the (ISD) confidential information into her computer. Plaintiff was not given a fair and impartial investigation as (ISD) knowingly allowed his rights to be violated by Rosa Levy.**

25. During the Plaintiffs personal investigation as to why he was not given fair treatment by (CSH) case workers he discovered multiple violations of fraud and additional discriminatory behaviors between (CSH) and Harding Village Apartments (HVA) against the Plaintiff in retaliation of his complaints against (DTPW) Bus Operators and (CSH).

26. On October 16th, 2024 Plaintiff filed a Complaint of Discrimination with ISD **Miami-Dade County Internal Services Department**, Risk Management Division 111 N.W. 1ST Street, Suite 2340, File # 1231-AL-22-0303735-001/002

*"...Based on their findings they have determined that there is no liability on the part of Miami-Dade County." They denied the claim due to the Plaintiff **not having a mask.***

This investigation was **unfair**, in that, Plaintiff provided **factual evidence** by the same department that a "**face covering**" was in fact an acceptable replacement.

On the Previous incident on February 10. 2021, Matthew Collier CFE Director of Investigations, Office of Inspector General Department of Business and Professional Regulation 2601 Blair Stone Road Tallahassee, FL 32399-1018; Found that a Transit Driver did carry the ultimate discretion on Covid Mask Rule acceptances. As to His injury,"A bus driver cannot **'beat up'** a passenger for refusing to exit the bus. Bus drivers have a legal responsibility to ensure the safety of their passengers, which includes not engaging in physical confrontations." "Drivers should generally avoid getting directly involved in physical altercations, as this would put them at risk.", **Specific Training**:" Bus drivers often receive training on how to handle potentially dangerous situations.", **Company Policy**: "Many transit agencies have specific policies in place for dealing with unruly or dangerous passengers, and drivers are expected to follow those policies." **Report Incidents**: "Drivers should report any incidents involving unruly passengers or potential safety hazards to the appropriate authorities, such as Miami-Dade Police." (AI overview).

27. Maria Smith and Francianne Dorvilus failed in their duties to **protect the rights of the Plaintiffs Due Process, as well as, Rights to Confidentiality, resulting in Breach of Contract of the investigation agreement.**

## *Human Resources Complaint*
## *Conspiracy to violate Civil Rights, Retaliation, Harassment, Discrimination, Fraud, Fair Housing Violations*

28. In May 2023 Plaintiff filed a complaint with Section 8 Housing for discrimination, **fraud and unfair housing practices** that caused him to come up against multiple phases of further discrimination, retaliation, harassment by (CSH) case workers and (HVA) management.

29. It came to the Plaintiffs knowledge that (CSH) was **withholding employment information** from its book-keeping due to mismanagement. **Plaintiff filed a formal fraud and**

7

**discrimination complaint in regards to Emilio Espina caseworker, taking advantage of black residents** by using their employment information to solicit government issue "BLU MOBILE TABLETS" for $20, but not for proper rental assessments as intended. **In retaliation, of said complaint** Plaintiff suffered multiple forms of **harassment** and **illegal evictions** intended **to thwart and deter his pursuit in his discrimination complaints against (CSH) and (HVA) from being investigated.**

30. Plaintiff personally **witnessed Rosa Levy taking confidential information of an ongoing (ISD) complaint against his authority and entered it in her computer.** When confronted by the Plaintiff she admitted entering it into her computer, but then deleting it. No action was taken.

31. Plaintiff **filed another formal complaint with Miami Dade Commission on Human Rights specifying fear of retaliation for discrimination and Fraud complaints, where Rosa consistently on several occasions abused her authority, being allowed to keep her position without any action being taken by (CSH).**

32. Octavia Pearson, a black woman, Manager at (HVA) **in cooperation** with (CSH) **retaliated against the Plaintiff by conspiring to illegally evict the Plaintiff on several occasions in an attempt to terminate his housing.** Where all other non-black residents were treated respectfully, black residents are publicly humiliated, disrespectfully harassed and "plotted against".

33. **On April 4, 2024 Plaintiff received an eviction notice from (HVA) for the amount of $3879.00; on August 5th for $3000; again, on August 6th $500; and finally, $205.00** which eventually were "Waived" by Terrance Leftridge Area Manager of (HVA).

34. **Octavia Peirson, Manager of (HVA) approached Plaintiff publicly several times in a threatening manner, verbally with no legal documentation, demanding to pay her $3,000 then again for $500 or he will be evicted in 3 days. Plaintiff called the Miami Beach Police against Octavia Peirson for harassment and attempted extortion (Police Report 2024-76950) by Miami Beach Police Officer Garcia and Plaintiff was advised to pursue civil action.**

35. (CSH) used **fraudulent rental assessments** in the amount of $3000 for rental payments from Mission United an organization that helps Veterans with late or unpaid rent.

8

36. Plaintiff **communicated his concerns many times to Paul Flores about being discriminated against because of his race**, in his complaint processes and especially rental assistance in that he repeatedly signed for rental assistance that was not paid on his behalf, but it didn't seem to be a problem for the white residents.

37. **On June 26th of 2024, through August 5th 2024, Paul Flores, knowingly and maliciously withheld pertinent employment information from Section 8 Housing intended for rental assessment which would have prevented attempted evictions.**

38. On October 18, 2024 after Plaintiff hand delivered a Demand letter with the intent to file lawsuit to the above-mentioned Defendants of (HVA) and (CSH). Terrance Leverage, Area Manager of (HVA), requested a meeting with the Plaintiff ultimately **confirming that their bookkeeping was due to their mismanagement and he needed a "grace" period to "fix" their books.** After Plaintiff voiced his concerns about being discriminated against by his case workers and why white residents don't seem to have such a hard time with their rental assistance, Terrance Leftridge informed the Plaintiff that two out of the four case workers (Emilio E. and Octavia P.) were removed from their positions. That following day the Plaintiff witnessed Emilio Espino still working at the Harding Village location, however, the "Black manager" Octavia Peirson, was immediately removed.

39. On December 2, 2024 Terrance Leftridge waived the remaining $205.00 Plaintiff was required to pay by Section 8 Housing without explanation.

### *Additional events Black residents being plotted against, discriminated and harassed.*

40. On Friday Nov. 29th, Andrew Wold, a new Carrfour Housing Specialist assigned to the Plaintiff, was cautioned by the Plaintiff of potential violent issues that may occur during the weekend by a black resident "Nathaniel". Andrew Wold responded not to worry as "THEY" (HVA) were "WORKING ON GETTING HIM OUT OF HERE", implying the eviction of the resident. That following Sunday from 6:30 am to 7:30 6 black residents including the belligerent resident Plaintiff reported, became loud and disruptive, security on property **did not assist and no action was taken although disturbance warranted the assistance of the city Police.**

9

41. Days later, **Terrence Leftridge Area Manager of Harding Village Apartments was overheard publicly arguing with the resident "Nathaniel" about being evicted and was told to be out of the premises by Thursday, December 5th.** For some reason resident did not leave and was not evicted and still resides at Harding Village Apartments. Another attempted eviction of a black resident.

42. Due to new evidence, Andrew Wold was made aware of the additional defendant to the Plaintiff's Civil Discrimination Complaint of Area Manager TERRANCE LEFTRIDGE.

43. Plaintiffs advised Andrew Wold, that **he should not get involved in being an instrument of (HVA) or (CSH) to interfere with his upcoming disability claim interview** scheduled on January 10th. Andrew volunteered to assist the Plaintiff by providing his phone number for the interview.

44. Plaintiff sent a copy of the "BLACK CODES" to Andrew Wold as a means to show his concerns of similar tactics and beliefs of Carrfour Supportive Housing was using against black residents. "The Black Codes (1865) were a series of laws passed throughout the South in the wake of emancipation. Although often professing to respect the equality and civil rights of the newly emancipated, in reality most of the Black Codes were specifically designed to curtail the economic, political, and social freedom of African Americans and, through a combination of private and public efforts, restore much of the slave system that had existed prior to the war. Their passage inflamed Republicans in Congress and were cited as justification for passage of the Civil Rights Act of 1866 and the Fourteenth Amendment." (National Constitution Center Historic Documents… Constitutioncenter.org.)

45. On January 9, 2024, Andrew Wold gave his phone number for the interview and confirmation that he would be present, the **next following day of the interview January 10, Mr. Wold was a no show to assist the Plaintiff and never responded to the text from the number he gave for the interview.** As Plaintiff was about to panic, Rosa Levy (Defendant) notified him of a call by the disability office from her office phone. plaintiff proceeded with the interview on another case workers office desk phone. **During the interview Andrew Wold walked in seemingly oblivious to the calls and text. This was another attempt to sabotage**

**the Plaintiffs well-being and continued harassment by Harding Village Apartments and Carrfour Supportive Housing specialists.**

46. On that Saturday January 11, A Black resident was being disorderly towards non-black visitors. The **non-black Security on property "Frank" assisted the non-black visitors and called police on the black resident on the non-black visitors' behalf.**

### *Manufacturing of a False Accident Report, Misconduct, Intentional Torts*
Officer Mercier, Miami Beach Police Department

47. On April 1st Plaintiff was hit by an uber driver by James Pagano of 7921 Byron Ave. Miami Beach, Fl. on 43rd and Collins on his way to work. The investigating Miami Beach Police Officer Mercier arrived on scene and asked Mr. Pagano for his statement first. As the **driver exited his vehicle he stated verbally he did not see the plaintiff and that he was not watching the road**. In addition, the sidewalk entrance to **crosswalk was blocked by parked vehicles**, and multiple pedestrians waiting at the Transit bus and uber pickup blocking access to crosswalk.

48. Officer Mercier and assisting officers wore bodycam during the investigation requested by Attorney John Ameen was never produced for plaintiff for his defense. **Due to the officer's false assessment of the accident it was determined Plaintiff was at fault and could not pursue litigation** against the driver for his injuries and loss of his electric scooter.

49. **Plaintiff made Officer Mercier aware several times of concerns** that the assisting officers, as well as, himself were preparing a statement on behalf of the driver omitting the contributing circumstances on accident report. Officer Mercier wrote the plaintiff a ticket for Reckless Driving in a vehicle. (Ticket # A3KB4CP). Plaintiff did not have his day in court to

defend himself or give any type of testimony to the court concerning the deliberate omission of evidence in the accident report.

50. Plaintiff prepared a demand letter stating these claims to the Drivers insurance company (Progressive Insurance), the Officer, and Driver. Upon response to the Plaintiffs Demand Letter to Mr. James Pagano (Driver), Plaintiff has **settled his claim due to the factual evidence that was omitted by officer Mercier.**

## *Evidence*

Email correspondence, Cellphone Texts, Surveillance Footage, Formal complaints, Audio, video recording, Police Reports, Employment documentation, Rental assistance Assessments, Eviction process letters, Fraud complaints, Investigation reports.

## *Witnesses:*

Ms. Belkis, Supervisor Section 8 Housing Specialist
Officer Garcia, Miami Beach police Officer
Detective Castillo, Miami Beach Police officer
Officer Cabrera, Miami Beach Police Officer
Andrew Wold, Carrfour Specialist
Matthew Collier, CFE, Office of Inspector General
Kathey Gonzalez, Miami Beach Commissioner

## **IV. Claims for relief**

51. Florida's tort immunity law, Florida Statute 768.28, allows individuals to sue the state for damages caused by government employee negligence. Plaintiff requests the court to rule in his favor for the claims of Failure to Train City Workers resulted in Plaintiffs Wrongful Arrest that caused the Plaintiff to suffer multiple phases of Retaliation, Intentional Misconduct torts, Conspiracy to violate his Civil Rights, Conspiracy to commit Fraud, Battery, by Ronnie Glenn Jones, Miami Beach Police, The Department of Transportation and Public Works, Risk Management ISD, Carrfour Supportive Housing, and Harding Village Apartments

### V. Relief requested

38. Plaintiff seeks monetary relief for compensatory and punitive damages of the of $2,350,000.00 from the Defendants in their full capacity for Gross Negligence, Failure to Train City Workers, Fraud, Discrimination, Intentional Psychological Injury, Loss of Income, Emotional Distress, Mental Anguish, Loss of Property, Defamation of Character, Retaliation; Personal Injury, and Wrongful Arrest.

### VI. Jury Demand

Are you demanding a jury trial? __x_ Yes ___ No

Signed this _4.30_ day of _April_, 20_25_

_____
Signature of Plaintiff

I declare under penalty of perjury that the foregoing is truce and correct.

Executed on: _____

_____
Signature of Plaintiff