**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-24291-CIV-BECERRA/TORRES

HERMAN L. CRAWFORD,

*Plaintiff*,

v.

CITY OF MIAMI BEACH
POLICE DEPARTMENT, *et al.*,

*Defendants*.

_____________________________________________/

***REPORT AND RECOMMENDATIONS ON DEFENDANT MIAMI-DADE COUNTY INTERNAL SERVICES DEPARTMENT'S MOTION TO DISMISS***

This matter is before the Court on Defendant Miami-Dade Internal Services Department ("ISD")'s motion to dismiss. [D.E. 57]. ISD filed its motion in response to Plaintiff's "10th" amended complaint [D.E. 56]—the last in a series of complaints docketed without leave before this Court denied, without prejudice, any further amendments, because "[g]ranting yet another amendment at [that] point would not necessarily lead to speedy and efficient resolution of the action" [D.E. 68]. Plaintiff was also put on notice in the Court's Order at [D.E. 68] that he had not responded to the three pending motions to dismiss (including [D.E. 57]), and that they could be granted by default. The Court afforded Plaintiff a brief extension of time in which to respond to the motions to dismiss [D.E. 68], which Plaintiff then did in an omnibus filing at [D.E. 69]. ISD did not file a reply, and the time to do so has passed. After

careful review of the motion and response, relevant authority, and for the reasons discussed below, we **RECOMMEND** that Defendant ISD's motion to dismiss is **GRANTED, with prejudice**.

## *I. BACKGROUND*

Plaintiff's amended complaint contains several seemingly separate tracks of allegedly discriminatory behavior—one regarding Miami-Dade bus transit and masking requirements during the COVID-19 pandemic ("COVID" or "the pandemic"), another involving Section 8 housing issues; and another regarding a "false accident report" after Plaintiff was supposedly hit by an Uber driver. But for the purposes of Defendant ISD, Plaintiff appears to only include ISD in the allegations regarding Miami-Dade bus transit. Accordingly, Plaintiff levies three counts against ISD: (1) count I – violation of 42 U.S.C. § 1983; (2) count III – negligence under Fla. Stat. § 768.28; and (3) count IV – gross negligence. [D.E. 56 at 27].

As for the relevant factual allegations, Plaintiff claims that, between February 2021 and December 2021, various Miami-Dade city workers (including transit operators and police officers) "repeatedly violated Plaintiff's civil rights." [*Id.* at 6]. In brief, Plaintiff alleges several run-ins with Miami-Dade bus transit workers, stemming from mask mandates related to the pandemic. For example, on one occasion in February 2021, Plaintiff alleges having "observed overcrowding and violations of COVID-19 safety policies," and that "these rules were selectively enforced by the operator against Black passengers." [*Id.*] Plaintiff also recounts an incident from December 2021, where he "attempted to board Metro Transit Bus S

North at approximately 1:50 a.m. to return to his residence," but was refused[] service" because the transit operator "claim[ed] that Plaintiff was not wearing the appropriate mask, despite Plaintiff's compliance with mask requirements." [*Id.* at 7]. The altercation led to the involvement of the Miami Beach Police, and allegations of wrongful arrest and various damages against the Department. [*Id.* at 7–8].

As it pertains specifically to ISD, Plaintiff's allegations are as follows:

> Defendant **Francianne Dorvilus** is an investigator with the **Miami-Dade County Internal Services Department, Risk Management Division**, located at 111 NW 1st Street, Suite 2340, Miami, Florida 33128.
>
> . . .
>
> Defendants' [sic] DTPW and The Internal Services Departments investigations failure to enforce their own policies and their disregard of Plaintiff's reports constituted gross negligence, civil rights violations, harassment, and caused Plaintiff significant emotional distress. **Florida Statutes § 768.28**, titled "*Waiver of sovereign immunity in tort actions; recovery limits; civil liability for damages caused by the state or its subdivisions*."
>
> . . .
>
> On October 16, 2024, Plaintiff filed his formal injury claim on the December 9, 2021 bus incedent [sic] with the Miami-Dade County Internal Services Department ("ISD"), Risk Management Division. During the ISD investigation, staff ignored Defendant Levy to access and tamper with Plaintiff's confidential tax and account information compromising the fairness of the process.
>
> Plaintiff personally observed CSH caseworker **Rosa Levy**[1] acquiring confidential financial documentation form another caseworker "Janelly" related to his ISD complaint and entering it onto her computer. When confronted by the Plaintiff, Levy admitted entering the information, then claimed to delete it, but no corrective action was taken.

[1] The amended complaint associates Defendant Rosa Levy, among others, with Carrfour Supportive Housing. [D.E. 56 at 2]. As pleaded, is not clear how Defendant Levy is associated with ISD or any issue with ISD. In any event, for the purposes of this Report and Recommendations, she does not appear to have any employment affiliation such that she should be considered as part of ISD's motion to dismiss.

> Rosa Levy, made it clear she would not assist the Plaintiff in any manner in his pursuit to acquire evidence for his claim, interfered with Plaintiff's casework, violated his confidentiality with the Internal services Department.
>
> . . .
>
> Complaint (File # 1231-AL-22-0303735-001/002). ISD denied the claim, asserting that Plaintiff had ***not been wearing a mask***.
>
> . . .
>
> ***ISD coconspirator Maria Smith*** was the Supervisor at the time who was informed of Plaintiffs [sic] complaint to deliberate indifference of the findings of the investigation and ***Investigator Francianne Dorvilus***, actions were negligent and discriminatory. **Florida negligence statute** that allows suits against the State or its subdivisions **Florida Statutes § 768.28**, titled "*Waiver of sovereign immunity in tort actions; recovery limits; civil liability for damages caused by the state or its subdivisions*." When the failed in their duties to protect the rights of the Plaintiffs [sic] Due Process, as well as, ***Rights to Confidentiality***, resulting in ***Breach of Contract of the investigation agreement***.

[*Id.* at 3–11 (emphasis in original)]. In all, it appears that Plaintiff's allegations regarding ISD stem from Plaintiff-initiated complaints or investigations into the run-ins with Miami-Dade transit in February and December 2021.

## *II. ANALYSIS*

We note at the outset that Plaintiff's amended complaint waivers as to who or what is alleged to be a defendant in this matter. For instance, the opening paragraph of the amended complaint list "Defendants Miami Beach Police Department; Miami-Dade County Internal Services Department; Miami-Dade Department of Transportation and Public Works, Carrfour Supportive Housing; Harding Village Apartments; and the Housing Authority of Miami Beach." [*Id.* at 1–2]. But the amended complaint then proceeds to identify various individual "parties" (e.g., the transit operator of the bus from the December 2021 incident and various ISD

workers), who arise largely in conjunction with the factual allegations. The actual counts at page 27 do occasionally identify individuals by name, but others are simply for "All Defendants," and do not clarify if the individuals listed in the complaint are included, as opposed to the entities (e.g., ISD) which are in Plaintiff's opening paragraph and the actual case caption as the Defendants. And, as discussed more below, the amended complaint also appears to tack on additional claims that are untethered from any one Defendant.

But this waffling on supposed defendants affects, at least to a degree, how the Court must address the various motions to dismiss—including ISD's motion [D.E. 57], which is now before us. In other words: do Plaintiff's actions reflect an intent to sue these individuals personally, or simply include them as factual touchpoints to his narrative of claims? The answer may differ by party or motion. But for the purposes of ISD, the docket reflects an intent to include ISD employees Francianne Dorvilus and Maria Smith. [D.E. 20] (indicating summons issued for Dorvilus and Smith, among others).

As recounted above in block quote, Dorvilus and Smith are referred to only in their professional capacity. The record of service of process indicates this, as well. As for Dorvilus, [D.E. 23] is an executed summons from the U.S. Marshals Service, with service completed to a Lupe Seco, manager of the Liability Claims division.

For Smith, service of process is yet incomplete. [D.E. 22], from August 8, 2025, reflects an unexecuted service of process form from the U.S. Marshals Service, which states that "Maria Smith is not an employee of Miami-Dade County Internal Services

Dept. per manager Seco. Return unexecuted." Plaintiff then requested an extension of time to serve the remaining Defendants, including Maria Smith. [D.E. 25]. The Court granted the extension, and allowed Plaintiff until September 16, 2025, to effectuate service.

The next reference to Defendant Smith comes in the form of Plaintiff's November 12, 2025, filing of two further proposed summonses, one of which is for Maria Smith at a new address. [D.E. 64]. The Clerk of Court then entered an entry on the docket indicating that "Summons(es) will not be issued. The party(ies) on the summons(es) does not match the initiating documents. Filer may file a Notice of Filing Proposed Summons(es) with the corrected summons attached." [D.E. 65]. Plaintiff did not do so.

In any event, for both Dorvilus and Smith, "[a] claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employes the individual." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) (citing *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999)); *Brown*, 188 F.3d at 1290 ("We start with the proposition that a suit against a governmental official in his official capacity is deemed a suit against the entity that he represents.") (citing *Kentucky v. Graham*, 473 U.S. 159, 159–60, 165–66 (1985)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky*, 473 U.S. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).

So, for the purposes of Dorvilus and Smith, who for all intents and purposes appear to have been sued in their professional capacity (however erroneously that may have been), we find that to the extent Plaintiff has attempted to sue Dorvilus and Smith, such suits should be construed as being against ISD—not against the individuals themselves.

We say all of this because the service of process record does not reflect any actual attempt to serve process on ISD itself and its motion does not so much as mention by name either Dorvilus or Smith. And yet ISD's motion is the only one on the docket. Now, having accounted for all ISD members and entities involved, we turn to the substance of ISD's motion.

### A. ***ISD as a* Sui Juris *Entity***

Federal Rule of Civil Procedure 17(b)(3) dictates that a party's capacity to sue or be sued is determined "by the law of the state where the court is located." So, we turn to Florida law to determine whether ISD as an entity has the capacity to be sued.

ISD represents in its motion that it is a "municipal county department," or, in other words, a subdivision of Miami-Dade County. [D.E. 57 at 3]. Indeed, under Florida law, mere county departments cannot properly be defendants to suit. *See, e.g.*, *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1138 (11th Cir. 2010) ("In sum, we affirm the district court's decision to dismiss Silberman's complaint on the ground that [Miami Dade transit] is not *sui juris* under Florida law."); *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 945 (11th Cir. 2008) ("Because the [Miami-Dade Police Department] does not have the capacity to be sued under Florida law, the

district court did not err in dismissing it as a party."); *Joseph v. City of Tampa Solid Waste Dept.*, No. 8:12-CV-744-T-23TBM, 2012 WL 2865492, at *1 (M.D. Fla. July 11, 2012) ("Generally, a city government department may sue or suffer suit only if the department constitutes a separate legal entity explicitly empowered to sue or suffer suit. . . . The general rule holds in Florida."); *Barteet v. Eismann*, No. 13-80434-CIV, 2013 WL 5236640, at *2 (S.D. Fla. 17, 2013) ("The Court begins by observing that Defendants are correct that it is improper for Plaintiff to have named several county departments as Defendants."); *N. Miami Beach Water Bd. V. Gollin*, 171 So. 2d 584, 585 (Fla. 3d DCA 1965) (finding that "record has failed to reveal that the Water Board has the power to sue or be sued, which, under the authorities, is an essential to its being an autonomous entity" and holding that the plaintiff, as "a department of the appellee municipality," had no standing to intervene or sue); *Masson v. Miami-Dade Cnty.*, 738 So. 2d 431, 432 (Fla. 3d DCA 1999) ("[T]he [Miami-Dade] Police Department does not have the capacity to sue or be sued.")

Accordingly, being that ISD is such a subsidiary department of Miami-Dade County, it cannot properly be a defendant in this case, and we are compelled to **RECOMMEND** dismissal on that ground. The next question, however, is: should dismissal be with prejudice? We believe so.

The law on amendment in the Eleventh Circuit is generous for *pro se* plaintiffs—but it has limits. The 1992 case *Bank v. Pitt* instituted a rule that, "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses

the action with prejudice." 928 F.2d 1108, 1112 (11th Cir. 1992). By 2002, the Eleventh Circuit overruled *Bank*, to "substitute the following rule: A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff ,who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002). *Wagner*'s rationale was that the *Bank* rule gave a plaintiff "two bites at the apple": "a plaintiff could sit idly by as he awaited the district court's determination with respect to a Rule 12(b)(6) motion to dismiss" until he appealed an adverse ruling "as long as it was a final judgment," and remand for reasons of the *Bank* rule would then take the form of the second "bite." *Id.* at 543. The *Wagner* rule pulls the rip cord quicker and, as the opinion notes, brings the Eleventh Circuit in line with other sister circuits.

There is, however, a throughline between these cases, including those of sister circuits: that leave to amend still hinges on whether amendment would allow Plaintiff to state a claim for which relief could be granted. *See, e.g.*, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 76 (2d Cir. 1998) (rejecting the argument that the district court erred in dismissing the plaintiff's claims without leave to amend because the plaintiff never requested leave and also that "he has made no showing that he would be able to amend his complaint in a manner that would survive dismissal"); *Cinel v. Connick*, 15 F.3d 1338, 1346 (5th Cir. 1994) (district court did not err where appellant did not request leave to amend and "has failed to indicate specifically how he would amend his complaint to overcome . . . dismissal").

Here, Plaintiff has amended his complaint at least a handful of times, only three of which were with leave of Court. So, it cannot be said that Plaintiff has either lacked or did not seek the opportunity to amend. But the point of the survivability of dismissal is the lynchpin here.

Generally, we construe more liberally the filings of *pro se* parties. *See Estelle v. Gable*, 429 U.S. 97, 106 (1976) (a *pro se* complaint, "however inartfully pleaded," must be held to a less stringent standard than a formal pleading drafted by attorneys). And amendment is somewhat tied to that more liberal regard, in the sense that a *pro se* party may not be familiar with the intricacies of the law and a court's ruling allowing amendment could be, in so many words, a hint as to why the first complaint did not pass muster. *See Silberman*, 927 F.3d at 1132–33 (discussing amendment in the context of the "extra dose of grace" with which courts treat *pro se* filings). But even for *pro se* plaintiffs, grace need not be given where the opportunity to amend would be for naught. *Id.*; *see Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004) (a district court may properly deny leave to amend when an amendment would be futile).

As discussed, ISD, as a subsidiary municipal department of Miami-Dade County, cannot be sued. So, amendment of Plaintiff's claims against ISD would be entirely futile—irrespective of any grace due *pro se* plaintiffs or however many amendments have come before. Hence, we **RECOMMEND** dismissing with prejudice all claims (at least Claims I, III, and IV) against Defendant ISD.

That recommendation, however, also highlights another critical issue with Plaintiff's amended complaint: that it is an impermissible shotgun pleading and the exact claims against ISD (and others) are not necessarily determinable.

**B. *Plaintiff's Amended Complaint is a Shotgun Pleading***

For the purposes of dismissal, we need not reach ISD's second argument, that Plaintiff's amended complaint [D.E. 56] is a shotgun pleading. But while we recommend that *all claims* against ISD are dismissed because ISD literally cannot be sued under Florida law, we also acknowledge that it is nigh impossible on the face of the amended complaint to ascertain exactly what claims are being levied against ISD in the first place. So, for the sake of clarity within this Report and Recommendations, we also find for the reasons below that Plaintiff's amended complaint is an impermissible shotgun pleading.

On page 27 of the amended complaint, there is a list of counts—I through VII—levied against either "All Defendants" or a named subset. [D.E. 56 at 27]. So, we understand that Counts I, III, and IV are the only labeled counts levied against ISD (included in "All Defendants"). That said, however, the amended complaint also seems to haphazardly drop in other mentions of other statutes or claim assertions, e.g.: racketeering under Florida Statutes § 895.03 at [*id.* at 26] and failure to train and supervise city workers; conspiracy to violate civil rights; fraud and conspiracy to commit fraud; and battery at [*id.* at 28]. These appear outside the list of claims but also do not necessarily line up with the content of the claims. Battery, for example, is not in the list of claims. So, it is entirely unclear if these assertions outside the

actual list of claims are also claims that Plaintiff is levying—just without any specificity as to it being against which Defendant. And, in typical shotgun pleading fashion, the "Claims for Relief" segment generically "realleges and reincorporates by reference all preceding paragraphs as though fully set forth herein," which appears to apply to the entire section. [*Id.* at 26].

In short, "[t]he amended complaint is an incomprehensible shotgun pleading. It employs a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations gave rise to which claims for relief." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018). District courts "retain[ the] authority to dismiss a shotgun pleading on that basis alone," *id.* at 1357, considering such complaints "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanne[led] discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources," *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997).

So, yes, Plaintiff's amended complaint is a shotgun pleading and should also be dismissed on that ground. But, perhaps more importantly, to the extent there are any claims beyond Counts I, III, and IV that are levied against ISD not in text but in spirit, those claims, too, should be dismissed.

### C. ***The Possible Use of Artificial Intelligence***

We also note that Plaintiff's amended complaint, which, as discussed, is essentially a bare recitation of conclusory allegations; legal elements; or legal

definitions, exhibits what this Court has come to recognize as indicia of the likely use of artificial intelligence ("AI"). While there is no outright prohibition on using AI to draft legal briefs, we caution Plaintiff that by citing any case law, statute, rule, or other source of legal authority, a litigant is representing to this Court, pursuant to a duty of good faith, that such legal authority is genuine.

Any documents found to contain fictitious legal authority or sources may be stricken by the Court and may lead to dismissal of the case. *See, e.g.*, *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1347 (S.D. Fla. 2025) ("Anything less [than scrupulous review of work product created by artificial intelligence] is to abdicate one's duty, waste legal resources, and lower the public's respect for the legal profession and judicial proceedings."); *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1268 (S.D. Fla. 2007) ("The United States Supreme Court has held that in addition to the sanctions provisions in the Federal Rules of Civil Procedure and federal statutes, federal courts possess the inherent power to sanction parties and attorneys who conduct litigation in bad faith or who perpetrate fraud on the court." (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–51 (1991))).

We make no findings here as to Plaintiff's possible use of AI, but submit that briefing which contains errors or characteristics such as the following (from just a few pages) is suggestive of both the use of AI and a possible lack of due diligence in checking the veracity of the output of a large language model ("LLM"):

| Complaint Citation or Proposition | Page Number of Complaint | Issue |
|---|---|---|

| | | |
|---|---|---|
| "Defendant Suarez lacked **probable cause** to arrest or detain Plaintiff. As established in *State v. Perez (1973)* and *Hayes v. Florida (1985)*, an arrest requires facts sufficient to lead a reasonable officer to believe a crime has occurred. | [D.E. 56 at 8] | Legal conclusion; no factual information; incomplete case citations. |
| "Defendant's Suarez's' actions exceeded his lawful authority, as reinforced by *Florida v. Royer (1983)* and *C.W. v. State (2011)*, and violated Plaintiff's rights under the Fourth Amendment." | [D.E. 56 at 8] | Legal conclusion; no factual information; incomplete case citations. |
| "Surveillance footage, to be introduced into evidence, clearly depicts witness Pedro Cabrera, a ***non-Black, presumably Venezuelan passenger*** riding the Miami-Dade Metro ***without wearing a mask and consuming food,*** both of which are explicit ***violations of Miami-Dade Transit policy***. These facts establish a **prima facie case of disparate treatment**, as recognized under the **McDonnell Douglas framework** (*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973))." | [D.E. 56 at 8–9] | *McDonnell Douglas* discusses employment discrimination under Title VII. 411 U.S. at 792. Plaintiff's amended complaint does not include any claims regarding employment or Title VII. And, to that end, the framework in *McDonnell Douglas* would be inapplicable to the factual allegations with which it is presented in the amended complaint (see left). |
| "Under Florida law, a cause of action for breach of contract requires (1) the existence of a valid contract; (2) a material | [D.E. 56 at 11] | The actual quote is: "In *Abbott Lab., Inc. v. Gen. Elec. Capital*, 765 So.2d 737, 740 (Fla. 5th DCA 2000), the court held that |

| | | |
|---|---|---|
| breach by the defendant; (3) damages caused by the breach; and (4) performance by the plaintiff or a valid excuse for nonperformance. *J.J. Gumberg Co. v. Janis Services, Inc.*, 847 So. 2d 1048 (Fla. 4th DCA 2003)[.]" | | '[u]nder section 95.11(2)(b), the limitations period begins to run when "the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (1997). The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.'" *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003).<br><br>While not entirely off-base for the first three prongs, *J.J. Gumberg* simply does not have what is listed as prong four. There is no discussion of "excuse" or "nonperformance" in the entire case. *J.J. Gumberg* discusses statutes of limitation and declaratory judgments. 847 So. 2d at 1050. |

As discussed, we indeed construe more liberally the filings of *pro se* parties. *See Estelle v. Gable*, 439 U.S. at 106. So, we do not necessarily expect *pro se* litigants to be aware of the intricacies of citations or the precedential value of certain cases versus others (and do not judge the pleadings in such manner), but the way in which these errors appear are hallmarks of what cause us to suspect the use of AI. Yet, *pro se* litigants are nonetheless required to comply with all rules and requirements of the

jurisdiction in which they have filed [D.E. 5] or in which they are required to litigate (in, for example, the case of valid removal)—including a duty a good faith in representations to this Court. Although this is not today a ground on which we are recommending dismissal, any future filings in this or any other case must comply with the Court's rules.

## *III. CONCLUSION*

For the foregoing reasons, we hereby **RECOMMEND** that ISD's motion to dismiss [D.E. 57] be **GRANTED with prejudice**, such that all claims against it are dismissed. Additionally, because official-capacity suits are to be treated as against the agency for which the individual works, to the extent there are any claims against Dorvilus or Smith, we also **RECOMMEND DISMISSING with prejudice** those claims.

Further, because ISD in its capacity as a mere department of Miami-Dade County cannot be sued; no amendment will cure that defect; and that we have recommended dismissal with prejudice, we also **RECOMMEND** that [D.E. 87], ISD's motion to compel Plaintiff to withdraw first request for production of documents, be **DENIED as moot**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on

appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. §636(b)(1); 11th Cir. R. 3-1; *see, e.g.*, *Patton v. Rowell*, 678 F. App'x 898 (11th Cir. 2017); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767 (11th Cir. 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 18th day of August, 2026.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge