**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-24291-CIV-BECERRA/TORRES

HERMAN L. CRAWFORD,

*Plaintiff*,

v.

CITY OF MIAMI BEACH
POLICE DEPARTMENT, *et al.*,

*Defendants*.

__________________________________________/

***REPORT AND RECOMMENDATIONS ON DEFENDANT OFFICERS' JOINT MOTION TO DISMISS***

This matter is before the Court on Defendant Miami Beach Police Officer Mercier and Defendant Miami Beach Police Officer Suarez' (together, the "Defendant Officers") joint motion to dismiss. [D.E. 59]. The Defendant Officers filed their motion in response to Plaintiff's "10th" amended complaint [D.E. 56]—the last in a series of complaints docketed without leave before this Court denied, without prejudice, any further amendments, because "[g]ranting yet another amendment at [that] point would not necessarily lead to speedy and efficient resolution of the action" [D.E. 68]. Plaintiff was also put on notice in the Court's Order at [D.E. 68] that he had not responded to the three pending motions to dismiss (including [D.E. 57]), and that they could be granted by default. The Court afforded Plaintiff a brief extension of time in which to respond to the motions to dismiss [D.E. 68], which Plaintiff then

did in an omnibus filing at [D.E. 69]. The Defendant Officers did not reply and the time to do so has now passed. After careful review of the motion and response, relevant authority, and for the reasons discussed below, we **RECOMMEND** that the Defendant Officers' motion to dismiss be **GRANTED**.

## *I. BACKGROUND*

Plaintiff's amended complaint meanders through several, often separate tracks of allegedly discriminatory behavior—one regarding Miami-Dade bus transit and masking requirements during the COVID-19 pandemic, another involving Section 8 housing issues; and another regarding a "false accident report" after Plaintiff was supposedly hit by an Uber driver.

As it pertains specifically to the Defendant Officers (and, for the sake of context, the Miami Beach Police Department ("MBPD")), Plaintiff's factual allegations are as follows:

> Defendants **Officer Suarez** and **Officer Mercier** are sworn police officers employed by the **Miami Beach Police Department**, located at 1100 Washington Avenue, Miami Beach, Florida 33139.
> . . .
> Following [an altercation on and around a city bus], Miami Beach Police officers, including Defendant Officer Suarez, arrived on the scene. Relying on [transportation worker Defendant] Jones' misleading statements, Officer Suarez wrongfully arrested Plaintiff for misdemeanor battery, despite Jones' own sworn statement that Plaintiff never touched him—an essential element of the crime under Fla. Stat. § 768.28[.]
> . . .
> Defendant Suarez lacked **probable cause** to arrest or detain Plaintiff. As established in *State v. Perez (1973)* and *C.W. v. State (2011)*, and violated Plaintiff's rights under the Fourth Amendment.

Defendant Ronnie Jones and Officer Suarez's' [sic] actions directly caused Plaintiff to suffer emotional distress, loss of liberty, humiliation, [and] other damages.

. . .

Plaintiff thereafter sought to file criminal charges for felony battery against Defendant Jones and for wrongful arrest against Defendant Suarez. Miami Beach Police Department refused to investigate, and Internal Affairs likewise failed to take corrective action.

. . .

Despite [surveillance footage] evidence, the Miami Beach Police Department and State Attorney's Office refused to pursue Plaintiff's claims, and instead, Plaintiff faced additional harassment, including the filing of baseless trespass complaints from the State attorneys [sic] Office and City hall intended to dissuade him from pursing his legal rights and obstruct justice.

On May 7, 2023, Plaintiff was again harassed by another bus operator. Shortly thereafter, Miami Beach Police, accompanied by Defendant Octavia Pierson, Manager of Harding Village Apartments, arrived at Plaintiff's residence to investigate a fabricated "bomb threat" allegedly reported from Tallahassee.

. . .

Plaintiff's mistreatment by Metro Transit, Miami Beach Police, Carrfour Supportive Housing, and associated actors demonstrates a pattern of discrimination, retaliation, wrongful arrest, and deliberate indifference to Plaintiff's constitutional and statutory rights violations of Florida's fair housing Act.

. . .

Harding Village manager Octavia Pierson confronted Plaintiff in public, demanding immediate payment of $3,000 on August 5th and the following day August 6th for $500, threatening eviction within three days if he did not comply. Plaintiff contacted the Miami Beach Police to report harassment and attempted extortion (Police Report #2024-76950). He was advised by Officer Garcia to pursue civil remedies.

. . .

Defendant **Chania Somarriba**, Program Director of Carrfour Supportive Housing ("CSH"), with the assistance of Defendants **Octavia Pierson** (HVA Property Manager) and **Paul Flores** (Assistant Program Director, CSH), retaliated against Plaintiff for filing complaints of misconduct, housing code violations, fraud, and harassment by increasing Plaintiff's rent in order to discourage and obstruct his efforts to pursue legal claims against CSH, HVA, and the Miami Beach Police Department.

. . .

**In February 2023**, Defendant Flores assisted Plaintiff in obtaining surveillance footage related to an incident involving Miami Beach Police Officers. Shortly thereafter, CSH began ***charging Plaintiff rent, despite its prior failure to conduct proper rental assessments.***

. . .

Relying on these manipulated [employment] records, defendant Pierson falsely asserted that Plaintiff still owed substantial rent. On June 5 and 6, 2023, Pierson publicly confronted Plaintiff with threats of eviction, resulting in Plaintiff calling the Miami Beach Police to report harassment and attempted extortion.

. . .

On April 29, 2025, Plaintiff observed that a CSH caseworker was monitoring his personal social media accounts, including Instagram. Plaintiff attempted to file a racketeering complaint against CSH.

In response, Miami Beach Police Officer **Mercier**—who is also a Defendant in this action—was dispatched. Officer Mericer filed a false accident report, which Plaintiff alleges was intended to obstruct justice and sabotage his injury claim related to the April 2023 car accident.

. . .

On April 1, 2023, Plaintiff was struct by an Uber driver, identified as **James Pagano** of 7921 Byron Avenue, Miami Beach, Florida, while traveling near the intersection of 43rd Street and Collins Avenue on his way to work.

Defendant **Officer Mercier**, an officer of the Miami Beach Police Department, responded to the scene and took statements. Upon exiting his vehicle, Mr. Pagano admitted verbally that he "did not see the Plaintiff" and that he "was not watching the road."

At the time of the accident, the sidewalk entrance to the crosswalk was blocked by parked vehicles, while multiple pedestrians waiting for bus and Uber service obstructed Plaintiff's access to the crosswalk.

Plaintiff alleges that Officer Mericer, along with other assisting officers, deliberately omitted these contributing circumstances in the official accident report. Plaintiff specifically advised Officer Mericer of his concerns during the investigation, but they were disregarded.

Officer Mericer issued Plaintiff a citation for "Reckless Driving in a Vehicle" (Ticket #A3KB4CP) despite Plaintiff operating only an electric scooter and despite exculpatory evidence. Plaintiff was denied the opportunity to present testimony in court regarding the officer's omissions.

Body-worn camera footage from Officer Mercier and other responding officers was specifically requested by Plaintiff's attorney, **John Ameen**, but was never produced. Plaintiff alleges that the failure to preserve and produce this evidence constitutes **spoliation**.

As a direct result of Officer Mercier's false assessment, Plaintiff was wrongfully found at fault and initially barred from pursuing civil recovery for his injuries and the loss of his electric scooter.

**Florida Statute §918.13** – "Criminalizes **altering, …, concealing, or removing words or documents** with the intent to impair their availability in a . . . trial or investigation.

Plaintiff prepared and served a **demand letter of intent to sue** upon Mr. Pagano, Progressive Insurance, and Officer Mericer. Upon review, Mr. Pagano's insurer accepted Plaintiff's claim, and Plaintiff settled with the driver due to the factual evidence establishing liability that had been omitted from Officer Mercier's report.

On May 2, 2023, Plaintiff contacted the Miami Beach Police Department to report ongoing criminal conduct, including racketeering, harassment, and stalking by Carrfour Supportive Housing associates.

Despite the seriousness of the allegations, the Department dispatched **Officer Mercier**—a Defendant already subject to Plaintiff's misconduct claims—to respond, creating an obvious **conflict of interest**.

Officer Mercier directed Plaintiff to personally present his racketeering complaint to a detective at the Miami Beach Police Department. When Plaintiff arrived, however, he was denied assistance and instructed to use the Department's online reporting system.

. . .

By refusing to accept Plaintiff's complaint in person and instead relying on a dysfunctional online system that repeatedly failed, the Miami Beach Police Department displayed **deliberate indifference** to Plaintiff's rights.

Plaintiff alleges that the conduct of Officer Mericer and other Department personnel continues **misconduct, obstruction of justice, retaliation, spoliation, and continuation of ongoing civil rights violations.**

> Plaintiff alleges Officers' actions constituted unlawful obstruction under the color of law. Pursuant to *State v. Espinsosa (1966)*, the lawfulness of an officers' actions is a prerequisite for any claim of obstruction nor resisting an officer. Defendant Officers' demands were not lawful and exceeded their authority.
>
> As established in *C.W. v. State (2011)*, actions outside the scope of lawful duties cannot support claims of resistance or obstruction. Plaintiff's conduct in refusing to comply with an unlawful demand cannot constitute obstruction.
>
> Under *Darrell Keith Chapper v. State (2022)*, mere verbal expression alone, without physically obstructing an officer, does not constitute obstruction. Plaintiff's words or statements in response to Defendant Officers' demands dis not interfere with any lawful duty.

[*Id.* at 3–25 (emphasis in original)]. In all, Plaintiff appears to take issue with the actions of Officers Suarez and Mercier pursuant to the carrying out of their duties as police officers of the MBPD.

## *II. ANALYSIS*

### A. ***<u>Official-Capacity Suits and Whether MBPD is</u>*** **<u>Sui Juris</u>**

We note at the outset that Plaintiff's amended complaint waivers as to who or what is alleged to be a defendant in this matter. For instance, the opening paragraph of the amended complaint list "Defendants Miami Beach Police Department; Miami-Dade County Internal Services Department; Miami-Dade Department of Transportation and Public Works, Carrfour Supportive Housing; Harding Village Apartments; and the Housing Authority of Miami Beach." [*Id.* at 1–2]. But the amended complaint then proceeds to identify various individual "parties" (e.g., the transit operator of the bus from the December 2021 incident and the Defendant Officers), who arise largely in connection with the factual allegations. The list of

counts on page 27 does occasionally identify individuals by name, but others are simply for "All Defendants," and do not clarify if the individuals listed in the complaint are included, as opposed to the entities, which are in Plaintiff's opening paragraph and the actual case caption as the Defendants. And, as discussed more below, the amended complaint also appears to tack on additional claims that are untethered from any one Defendant.

We say this because the waffling on supposed defendants affects, at least to a degree, how the Court must address the various motions to dismiss—including that of the Defendant Officers [D.E. 59], which is now before us. In other words: do Plaintiff's filings and actions reflect an intent to sue these individuals personally or professionally, or simply include them as factual touchpoints to his narrative of claims? The answer may differ by party or motion. But for the purposes of the Defendant Officers and MBPD, Plaintiff's amended complaint is not clear in terms of its aims. So, we cast a wide net.

First, and because of the preclusive effect, we address Plaintiff's claims to the extent they are official-capacity suits. We acknowledge that the motion before us [D.E. 59] has been put forth by the Defendant Officers, not MBPD. And, for that matter, that MBPD itself was never served with process in this matter and, thus, has never appeared, let alone filed a motion to dismiss. But in the context of official-capacity suits and with Plaintiff's amended complaint so patently unclear as to his aims and claims, that does not necessarily matter.

As an initial matter, MBPD is a county department—it literally cannot sue or be sued under Florida law. *See, e.g.*, *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 945 (11th Cir. 2008) ("Because the [Miami-Dade Police Department] does not have the capacity to be sued under Florida law, the district court did not err in dismissing it as a party."); *Masson v. Miami-Dade Cnty.*, 738 So. 2d 431, 432 (Fla. 3d DCA 1999) ("[T]he [Miami-Dade] Police Department does not have the capacity to sue or be sued."); *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1138 (11th Cir. 2010) ("In sum, we affirm the district court's decision to dismiss Silberman's complaint on the ground that [Miami Dade transit] is not *sui juris* under Florida law."); *Joseph v. City of Tampa Solid Waste Dept.*, No. 8:12-CV-744-T-23TBM, 2012 WL 2865492, at *1 (M.D. Fla. July 11, 2012) ("Generally, a city government department may sue or suffer suit only if the department constitutes a separate legal entity explicitly empowered to sue or suffer suit. . . . The general rule holds in Florida."); *Barteet v. Eismann*, No. 13-80434-CIV, 2013 WL 5236640, at *2 (S.D. Fla. 17, 2013) ("The Court begins by observing that Defendants are correct that it is improper for Plaintiff to have named several county departments as Defendants."); *N. Miami Beach Water Bd. V. Gollin*, 171 So. 2d 584, 585 (Fla. 3d DCA 1965) (finding that "record has failed to reveal that the Water Board has the power to sue or be sued, which, under the authorities, is an essential to its being an autonomous entity" and holding that the plaintiff, as "a department of the appellee municipality," had no standing to intervene or sue); Fed. R. Civ. P. 17(b)(3) (a party's capacity to use or be sued is determined "by the law of the state where the court is located").

And "[a] claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employes the individual." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) (citing *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999)); *Brown*, 188 F.3d at 1290 ("We start with the proposition that a suit against a governmental official in his official capacity is deemed a suit against the entity that he represents.") (citing *Kentucky v. Graham*, 473 U.S. 159, 159–60, 165–66 (1985)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky*, 473 U.S. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).

So, by transitive property, to the extent that Plaintiff's claims against the Defendant Officers are official-capacity suits, Plaintiff is, in legal reality, suing MBPD. Given that MBPD cannot be sued, we **RECOMMEND DISMISSING with prejudice** all claims levied against MBPD. And, to the extent that Plaintiff is suing the Defendant Officers in their official capacity, for the same reasons we **RECOMMEND DISMISSING with prejudice** all such official-capacity claims against them.

That recommendation, however, also highlights another critical issue with Plaintiff's amended complaint: that it is an impermissible shotgun pleading and the exact claims against the Defendant Officers (or MBPD) are not necessarily

determinable. This defect also fells any personal-capacity claims[1] Plaintiff may be levying against the Defendant Officers.

**B. *The Amended Complaint is a Shotgun Pleading***

Plaintiff's amended complaint is an impermissible shotgun pleading, plain and simple. For example, on page 27 of the amended complaint, there is a list of counts—I through VII—levied against either "All Defendants" or a named subset. [D.E. 56 at 27]. So, we understand from that list that Counts I (42 U.S.C. § 1983); III (negligence under Fla. Stat. § 768.28); and IV (gross negligence) are being levied against "All Defendants," including the Defendant Officers. [*Id.*] Additionally, Count V ("False Arrest / False Imprisonment") is being levied against Defendant Officer Suarez. [*Id.*] But given the remainder of the amended complaint, that is far from the full picture.

The amended complaint, generally, also seems to haphazardly drop in other mentions of other statutes or claim assertions, e.g.: racketeering under Florida Statutes § 895.03 at [*id.* at 26] and failure to train and supervise city workers; conspiracy to violate civil rights; fraud and conspiracy to commit fraud; and battery at [*id.* at 28]. These appear outside the list of claims but also do not necessarily line up with the content of the claims. Battery, for example, is not in the list of claims. So, it is entirely unclear if these assertions outside the actual list of claims are also claims that Plaintiff is levying—just without any specificity as to it being against which Defendant. And, in typical shotgun pleading fashion, the "Claims for Relief"

[1] "Personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky*, 473 U.S. at 165 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–38 (1974)).

segment generically "realleges and reincorporates by reference all preceding paragraphs as though fully set forth herein," which appears to apply to the entire section. [*Id.* at 26].

What's more, the final segment of Plaintiff's factual allegations almost entirely concerns Defendant Officer Mercier. [*Id.* at 22–25]. There are several assertions that could, in context of the timbre of the amended complaint, be claim assertions that are not otherwise identified as such (as on, for example, page 27), e.g.:

> Body-worn camera footage from Officer Mercier and other responding officer was specifically requested by Plaintiff's attorney, **John Ameen**, but was never produced. Plaintiff alleges that the failure to preserve and produce this evidence constitutes **spoliation**.
>
> As a direct result of Officer Mercier's false assessment, Plaintiff was wrongfully found at fault and initially barred from pursuing civil recovery for his injuries and the loss of his electric scooter.
>
> **Florida Statute §918.13** – "Criminalizes **altering, …, concealing, or removing records or documents** with the intent to impair their availability in a … trial or investigation.

[*Id.* at 23 (emphasis in original)]. And yet there is no apparent tie-in to the list of claims on page 27, as Officer Mercier is—despite featuring quite heavily in the factual allegations and other claim-like statements—never actually listed as an individual Defendant for any of the listed claims.

And, further, the amended complaint contains several instances where Plaintiff uses the term "Defendants" in conjunction with specific claims (outside of page 27), but makes no effort to tie those claims to any one Defendant or note that it applies to "all Defendants," e.g.:

> Plaintiff asserts a claim for **extortion** under **Fla. Stat. § 836.05**, as Defendants knowingly threatened the Plaintiff with eviction, increased rent, or other adverse housing actions in other to compel payment or compliance, causing Plaintiff financial loss, emotional distress, and other damages.

[*Id.* at 17].

In short, "[t]he amended complaint is an incomprehensible shotgun pleading. It employs a multitude of claims and incorporates by reference all of its factual allegations into each claim, making it nearly impossible for Defendants and the Court to determine with any certainty which factual allegations gave rise to which claims for relief." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018). District courts "retain[ the] authority to dismiss a shotgun pleading on that basis alone," *id.* at 1357, considering such complaints "exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanne[led] discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources," *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997).

It also merits noting that Plaintiff has amended his complaint at least a handful of times, only three of which were with leave of court. So, it cannot be said that Plaintiff has either lacked or did not seek the opportunity to amend. Accordingly, we **RECOMMEND** that the Defendant Officers' motion to dismiss [D.E. 98] be **GRANTED**.

But given the number of amendments that Plaintiff has already made, and the fact that the deficiencies discussed herein have not been cured by that litany of amendments, to the extent Plaintiff is still seeking to levy personal-capacity claims

against the Defendant Officers, we **RECOMMEND** allowing Plaintiff leave to amend once more. After which, if that amended complaint is still insufficient as pleaded, the claims against the Defendant Officers (as possibly others) should be dismissed with prejudice.

## *III. CONCLUSION*

For the foregoing reasons, we hereby **RECOMMEND** that the Defendant Officers' joint motion to dismiss [D.E. 59] be **GRANTED**. Because Plaintiff's amended complaint is somewhat unclear as to his aims, we further **RECOMMEND** that to the extent the claims he is levying against the Defendant Officers are official-capacity claims, such that they are, in legal reality, a suit against MBPD—an entity that cannot be sued under Florida law, such claims be **dismissed with prejudice**. And to the extent those official-capacity claims are against the Defendant Officers, they should also be **dismissed with prejudice**.

To the extent, however, that Plaintiff is pursuing personal-capacity claims against the Defendant Officers, because Plaintiff has already amended his complaint several times, we further **RECOMMEND** that Plaintiff be given one last opportunity to amend, after which, should that amended complaint still be insufficient as pleaded, any personal-capacity claims against the Defendant Officers, should be dismissed with prejudice.

We further find good cause to expedite any written objections to this Report and Recommendations. The parties therefore have seven (7) days from service of this Report and Recommendation within which to file written objections, if any, with the

District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. §636(b)(1); 11th Cir. R. 3-1; *see, e.g.*, *Patton v. Rowell*, 678 F. App'x 898 (11th Cir. 2017); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767 (11th Cir. 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 20th day of August, 2026.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge